IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DALE DEVON SCHEANETTE,          §
                                §
          Petitioner,           §
                                §
                                §
VS.                             §    NO. 4:05-CV-718-A
                                §
DOUGLAS DRETKE, Director,        §
Texas Department of Criminal     §
Justice, Institutional           §
Division,               §
                                §
          Respondent.           §

MEMORANDUM OPINION
and
ORDER

     Came on for consideration the petition for writ of habeas

corpus ("petition")[1] filed by Dale Devon Scheanette

("Scheanette"), an inmate in the Texas Department of Criminal

Justice, Institutional Division, who is under sentence of death.

The court has determined that the petition should be denied for

the reasons set forth in this memorandum opinion and order.


I.

Procedural History

     On August 6, 2002, an indictment was filed against

Scheanette for the December 24, 1996, murder of Wendie Prescott

---

[1] While the undersigned recognizes that 28 U.S.C. § 2254 contemplates the
filing of an "application" for writ of habeas corpus, the practice of the
Northern District of Texas has long been instead to use the term "petition."
Consistent with this now ingrained practice, the undersigned refers to
Scheanette's application under 28 U.S.C. § 2254 for writ of habeas corpus as
the "petition" and uses the term "petitioner" in lieu of "applicant."

while in the course of committing or attempting to commit sexual assault on her.  In January 2003, a jury convicted Scheanette of capital murder.  Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, §§ 2(b) and (e), the judge of the Criminal District Court Number Four of Tarrant County, Texas sentenced Scheanette to death.  The Texas Court of Criminal Appeals affirmed his conviction on September 15, 2004.  Scheanette v. State, 144 S.W.3d 503 (Tex. Crim. App. 2004).  His pro se petition for writ of certiorari was then denied.  Scheanette v. Texas 543 U.S. 1059 (2005).

Scheanette subsequently initiated state-habeas proceedings in the convicting court.  On September 23, 2004, the trial court entered findings of fact and conclusions of law recommending that state-habeas relief be denied.  On April 13, 2005, however, the Texas Court of Criminal Appeals remanded Scheanette's case to the trial court so that the habeas record could be supplemented with affidavits from counsel or other evidence pertaining to his ineffective assistance of counsel claims.  Ex Parte Scheanette, 2005 WL 913120 (Tex. Crim. App. Apr. 13, 2005).  Ultimately, on December 14, 2005, after having reviewed the record as supplemented, the Court of Criminal Appeals denied Scheanette's petition for habeas relief from his capital murder conviction.  Ex Parte Scheanette, 2005 WL 3429304 (Tex. Crim. App. Dec. 14, 2005).

On March 14, 2005, while his state petition was pending

2

before the Texas Court of Criminal Appeals, Scheanette filed a

pro se federal habeas petition in the Eastern District of Texas.

After being transferred to this court, the petition was dismissed

without prejudice so that Scheanette could have the opportunity

to exhaust his state-court remedies.   See Scheanette v. Dretke,

No. 4:05-CV-489-A (N.D. Tex. Aug. 25, 2005).   On January 17,

2006, Scheanette filed the present federal habeas petition

through his current counsel, Richard Alley.

II.

Underlying Facts

A.   The State's Evidence

On Christmas Eve of 1996, Norman and Brenda Norwood became

worried about their twenty-year old niece, Wendie Prescott, when

she failed to show-up for a planned shopping trip with her

sister.   26 Tr.[2] at 50-52.   Around 11:00 p.m., Norman went to

Prescott's apartment, only to discover her naked body lying face

down in a partially filled bathtub.   Id. at 53-58.   Her neck,

hands and feet were tied in duct tape, which trailed from her

neck down behind her back to her hands and feet.   Id. at 57-58.

The medical examiner believed that she had been bound in this

fashion prior to death.   27 Tr. at 37-38.   The autopsy revealed

that Prescott had been manually strangled, with the possibility

that her immersion in the tub also played a role in her death.

---

[2]A copy of Scheanette's state-court records was forwarded to the court
on December 13, 2005.   The "Tr." reference is to the court reporter's record
of the transcribed, state-trial proceedings.   Citations to "Tr." are preceded
by volume number and followed by the relevant page number(s).

Id. at 14-16.  A sexual assault examination was conducted and
sperm samples collected and preserved for DNA testing.  Id. at
16-18, 23-28, 81-82.

Though investigators found a high-quality dust print at
Prescott's apartment, initial comparisons yielded no matches.  26
Tr. at 98-100, 163.  In the summer of 2000, however, the print
was resubmitted to the FBI computer system, which, through the
use of new technology, was able to narrow the list of possible
matches.  Id. at 124-28, 163, and 200-204.  One of the matches
scored over 2500 points, almost a 1000 points more than the next
highest score.  Id. at 126-29.  A FBI analyst concluded the print
found in Prescott's apartment matched the known print of
Scheanette.  Id.  This conclusion was later confirmed by two
Arlington investigators.  Id. at 182-186, 203-204.  After
obtaining a search warrant, officers obtained saliva samples from
Scheanette.  27 Tr. at 53.  DNA testing matched the DNA extracted
from these samples to the DNA extracted from Prescott's corpse
with a statistical certainty of one in 763 million.  Id. at 145-
48.

At the punishment phase, the State connected Scheanette to
yet another capital murder, that of twenty-six year old Christine
Vu.  On September 17, 1996, Vu's boyfriend discovered
her naked body lying face down in a half-filled bathtub. 30 Tr.
at 128-130.  As were Prescott's, Vu's hands, ankles and neck were
also tied with duct tape.  Id.  Vu's autopsy revealed that she
had been manually strangled and drowned.  Id. at 159-160. After

making the print-match with Scheanette in the Prescott murder, Arlington investigators were able to do the same with prints found at Vu's apartment, which was located in the same complex as Prescott's apartment. Id. at 134-141. DNA testing of Vu's autopsy samples matched Scheanette with a statistical certainty of one in 21.4 quadrillion. Id. at 208-210.

At the punishment phase, the State also tied Scheanette to a series of other brutal sexual assaults:

- On September 21, 1998, Jochline Howard was raped in her children's bedroom by an intruder who threatened a shootout involving them if she called the police before he got away. 29 Tr. at 47-58. DNA evidence collected from the investigation of that sexual assault matched Scheanette's DNA samples with a statistical certainty of 1 in 1.92 trillion.[3] Id. at 61; 31 Tr. at 28-29.

- On October 2, 1998, Keisha Ricks was raped in her apartment by an intruder who threatened to kill her and her parents if she called the police. 30 Tr. at 6-16. To prove he knew where her parents lived, he correctly recited their address. Id. at 14-18. DNA evidence collected from the investigation of that sexual assault also matched Scheanette's DNA samples with a statistical certainty of 1 in 1.92 trillion. 31 Tr. 29-36.

- On December 18, 1998, Cicely Stinson was asleep with her two-year old son in her bed. 30 Tr. at 57-60. She awoke to the sight of an intruder sitting on the edge of her bed, with her son no longer in it. Id. at 60-61. When she began screaming, the intruder told her he would hurt her and the little boy if she continued. Id. at 63-64. At one point during the sexual assault, Stinson hit the intruder and ran into the bedroom with her son, locked the door, and tried to call the police. Id. at 66-67. But the phone was not working. Id. at 67. The intruder broke through the door and ordered her to put down her crying child. Id. at 68-69. She convinced him to let her get her son some milk, at

---

[3]According to testimony at trial, this statistic means that, assuming the population of earth were 300 times its current size, there would be one person in that population with this same DNA profile. 31 Tr. at 36.

which time she ran toward the front door, where they struggled.  Id. at 69-70.  When Stinson's son started to hit the intruder on the leg, he loosened his grip around Stinson's neck, at which point she was able to get free, open the door and scream.  Id. at 71-72.  Her assailant then fled.  Id. at 71.  DNA evidence collected from the investigation of that sexual assault also matched Scheanette's DNA samples with a statistical certainty of 1 in 1.92 trillion.  31 Tr. at 37-39.

- On February 23, 1999, Chima Benson awoke to an intruder.  31 Tr. at 60-66.  After she bit him during forced oral sex, he beat, overpowered, and raped her.  Id. at 69-71.  Benson suffered contusions and lacerations to her breasts, groin, and legs, as well as severe head and facial injuries for which she had to undergo two surgeries to prevent her left eye from sinking into her head.  Id. at 77-78, 88-90.  DNA evidence collected from the investigation of that sexual assault matched Scheanette's DNA samples with a statistical certainty of 1 in 20 million.  32 Tr. at 12-17, 42-43.

- On October 26, 1999, Adriene Fields awoke to an intruder who jumped on her bed, covered her mouth with his hand, and put a pistol to her back.  29 Tr. at 8-13.  The intruder raped her.  Id. at 14-21.  DNA evidence collected from the investigation of that sexual assault matched Scheanette's DNA samples with a statistical certainty of 1 in 3.89 quadrillion.  32 Tr. at 19-21, 43.

The State also introduced evidence that, while incarcerated awaiting trial, jail guards found concealed in Scheanette's cell a contraband triangular piece of plexiglass that could have been used as a weapon.  33 Tr. at 18-20.  Finally, the State introduced evidence of a burglary conviction from 1999.  Id. at 26-27.

B.   Scheanette's Evidence

During the punishment phase, various family members and a chaplain testified on Scheanette's behalf.  33 Tr. at 31-53, 134-142, 239-256.  A retired employee of the Texas Department of

6

Criminal Justice, S.O. Woods, also testified concerning the security measures taken in prison for handling violent inmates. Id. at 54-133.  Finally, Dr. Gilda Kessner testified concerning Scheanette's future dangerousness.  Id. at 54-133.

III.

Scope of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA").  Under AEDPA, the ability of federal courts to grant habeas relief to state prisoners is narrowly circumscribed:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA, § 104(3) (codified at 28 U.S.C. § 2254(d)).  AEDPA further provides:

> (e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

7

AEDPA § 104(4) (codified at 28 U.S.C. § 2254(e)(1)).

Having reviewed the petition, the response, the record, and applicable authorities, the court finds that none of Scheanette's grounds has merit.

IV.

Grounds for Relief

Scheanette urges ten grounds in support of his petition. Briefly, they are as follows:

Ground One:  The future-dangerousness special issue denied Scheanette due process because it diluted the State's burden of proof and failed to define "probability."[4]

Ground Two:  The Texas 10/12 Rule violated Scheanette's rights under the Eighth and Fourteenth Amendments.

Ground Three:  The Texas Court of Criminal Appeals's refusal to review the sufficiency of the mitigation evidence offends due process.

Ground Four:  Scheanette received ineffective assistance of counsel.

Ground Five:  Scheanette was denied due process and his right to jury trial when, in the jury charge, the trial court "grafted" the evidentiary requirements of Special Issue No. 1 terminology on future dangerousness onto Special Issue No. 2 on mitigation.

Ground Six:  The Texas death penalty scheme is unconstitutional as applied to Scheanette because the prosecution did not have to negate the existence of mitigation beyond a reasonable doubt.

Ground Seven:  The mitigation instructions sent "mixed signals" to the jury in violation of the Eighth and Fourteenth

---

[4]Though Scheanette stated this ground as two separate ones, namely grounds one and two, he discussed them together.  Consequently, the court has done the same and combined the two grounds into one for discussion below.

Amendments.[5]

   Ground Eight:  Scheanette was denied due process and his
right to jury trial by the trial court's refusal to grant two
requested jury charges.[6]

   Ground Nine:  Scheanette was denied due process and his
right to jury trial by the court's refusal to permit counsel to
voir dire on issues regarding parole in mitigation of the death
penalty.

   Ground Ten:  Scheanette is entitled to relief for cumulative
error of above constitutional violations even if no separate
infraction by itself rose to that magnitude.

                              V.

                          Discussion

A.   Ground One: The future-dangerousness special issue denied
     Scheanette due process because it diluted the State's burden
     of proof and failed to define "probability."

   Respondent contends, and Scheanette does not otherwise

dispute, that the claims he asserts through this ground have

already been found to be procedurally barred in the state-habeas

proceedings.  See Resp't's Federal Answer at 13; Scheanette's

Federal Habeas Pet. at 17-24.  Indeed, the record clearly

reflects the trial court's finding in Scheanette's state-habeas

action that he failed to raise either the issue of the dilution

of the State's burden of proof or the failure to define

"probability" on direct appeal.  See Habeas Record ("HR") at 18

(Point of Error No. 1), 19 (Point of Error No. 11), 235 (Trial

_____

   [5]Scheanette numbered grounds eight and nine both appear to complain
about the jury being sent "mixed signals."  Consequently, these grounds have
been combined into one for discussion below.

   [6]Though Scheanette stated this ground as two separate ones, namely
grounds ten and eleven, he discussed them together.  Consequently, the court
has done the same and combined the two grounds into one for discussion below.

                               9

Court's Findings of Fact and Conclusions of Law of September 23, 2004, ¶ 4).[7]   The Texas Court of Criminal Appeals subsequently adopted the trial court's findings.  Ex Parte Scheanette, 2005 WL 3429304 (Tex. Crim. App. Dec. 14, 2005).

The prior finding of procedural default precludes federal-habeas review of this ground:

> We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Here, Scheanette has made no attempt to show cause and prejudice for his default or that failure to consider this ground will result in a fundamental miscarriage of justice.  Nor does it appear that he could.  Consequently, the court is satisfied that ground one should be denied as procedurally defaulted.  See Hughes v. Johnson, 191 F.3d 607, 614 (procedural-default doctrine precludes federal habeas review when the last reasoned state-court opinion addressing such claim explicitly rejected it on a state-procedural ground) (citation omitted).

Moreover, procedural-default aside, the state court's

---

[7]Points of error 1 (dilution of burden of proof) and 11 (failure to define probability) in the state-habeas action collectively comprise ground one in the current habeas proceeding.  See HR at 17, 19. Respondent claims that at least point of error 1 was also defaulted at the trial level.  The record, however, does not reflect a clear finding in this regard.  Compare HR at 233 ¶ 3, 5 with 235, ¶ 4.

substantive resolution of the issues raised by ground one did not involve an unreasonable application of federal law.  The future-dangerousness special issue has been specifically held constitutional by the Supreme Court.  <u>See</u> <u>Jurek v. Texas</u>, 428 U.S. 262, 269-277 (1976).  Consequently, a ruling in favor of Scheanette's on this ground would involve the impermissible creation and retroactive application of a new constitutional rule on federal habeas review.  <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288 (1989) (generally new rule of constitutional law is not to be applied retroactively on federal habeas review); <u>see</u> <u>also</u> <u>Rowell v. Dretke</u>, 398 F.3d 370, 379 (5th Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 103 (2005) (holding that it would violate <u>Teague</u> to accept petitioner's argument that the term "'probability'" unconstitutionally swallows the reasonable doubt standard under an extension of <u>Apprendi</u> and <u>Ring</u> by <u>Blakely</u>) (citations omitted).

Finally, the Fifth Circuit has repeatedly rejected attacks on a court's failure to define "probability" in this context on the ground that such term is not constitutionally vague.  <u>See</u>, <u>e.g.</u>, <u>Woods v. Johnson</u>, 75 F.3d 1017, 1033-34 (5th Cir. 1996); <u>Hughes</u>, 191 F.3d 615-16.

B.   <u>Ground Two:  The Texas 10/12 Rule violated Scheanette's rights under the Eighth and Fourteenth Amendments</u>.

Here, Scheanette complains that the Texas 10/12 Rule[8] "generates the danger that confused jurors otherwise predisposed to hold-out on voting for a death sentence will conform to a 'majority-rules' mentality" in violation of <u>Mills v. Maryland</u>, 486 U.S. 367 (1988). Scheanette's Federal Habeas Pet. at 25. He likens the rule is akin to a dynamite charge. <u>Id.</u> at 26. This ground, however, was also found to be procedurally barred in the state-habeas proceedings. <u>See</u> HR at 18 (Point of Error No. 3) 233, ¶¶ 3,6. Specifically, the trial court found that Scheanette had not raised this issue at trial or on appeal. <u>Id.</u> The Texas Court of Criminal Appeals subsequently adopted these findings. <u>Ex Parte Scheanette</u>, 2005 WL 3429304 (Tex. Crim. App. Dec. 14, 2005). Again, Scheanette has failed to demonstrate cause for his "default and actual prejudice as a result of the alleged violation of federal law" or that the "failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750. Because his procedural default is thus unexcused, the procedural-default doctrine precludes federal habeas review of this ground as well. <u>Hughes</u>, 191 F.3d at 614.

Even if not procedurally defaulted, the Fifth Circuit has

---

[8]As summarized by the Fifth Circuit, the gist of the 10/12 Rule is as follows: "The Texas sentencing statute provides that if a capital sentencing jury answers 'yes' to each of the punishment questions submitted, the defendant will be sentenced to death, but if ten or more jurors answer one or more of the issues 'no,' or of the jury is unable to agree on an answer to any issue, the defendant will be sentenced to life imprisonment. Tex. Code Crim. Proc. Ann. 37.071(d)(2), (f)(2), & (g) (Vernon Supp. 1999). The statute, however, prohibits the court or the attorneys for the state or the defendant from informing the jury of the effect of the failure to agree on an issue. In Texas, this is commonly called the "10-12 Rule." <u>Alexander v. Johnson</u>, 211 F.3d 895, 897 (5th Cir. 2000).

repeatedly rejected this very claim, both on the merits and on the basis that to extend <u>Mills</u> to grant relief in a Texas case would require the court to announce and apply a new rule of constitutional law in violation of <u>Teague</u>.  See <u>Alexander</u>, 211 F.3d at 897 (relief denied based on <u>Teague</u>); <u>Jacobs v. Scott</u>, 31 F.3d 1319, 1328-29 (5th Cir. 1994) (relief denied as procedurally barred and on the merits); <u>Webb v. Collins</u>, 2 F.3d 93, 95 (5th Cir. 1993) (relief denied based on <u>Teague</u>); <u>Woods</u>, 75 F.3d at 1036 (relief denied based both on <u>Teague</u> and the merits); <u>see also</u> <u>Jones v. United States</u>, 527 U.S. 373, 381 (1999) (the Eighth Amendment does not require that jurors be instructed as to the consequences of their failure to agree).  Therefore, this ground lacks substance, too.

C.   <u>Ground Three:  The Texas Court of Criminal Appeals's refusal to review the sufficiency of the mitigation evidence offends due process.</u>

Yet again, Scheanette failed to raise this ground on appeal. It is therefore procedurally defaulted.  See HR at 18-19 (Point of Error No. 4), 233, ¶ 6.[9] As with the grounds denied above, Scheanette has failed again to demonstrate cause for his "default and actual prejudice as a result of the alleged violation of federal law" or that the "failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.  Federal habeas review of this ground is thus foreclosed.  Scheanette has no constitutional right to such a

---

[9]Like all the other findings of the trial court in the state-habeas proceedings, this one too was adopted by the Court of Criminal Appeals.  <u>Ex Parte Scheanette</u>, 2005 WL 3429304 (Tex. Crim. App. Dec. 14, 2005).

review in any event.  <u>See</u> <u>Hughes</u>, 191 F.3d at 621-22.      D. <u>Ground Four: Scheanette received ineffective assistance of counsel</u>.

Scheanette criticizes his trial counsel for calling two witnesses -- Dr. Gilda Kessner and S.O. Woods -- during the punishment phase.  He contends that on cross-examination these two witnesses made the case against him with regard to future dangerousness.  <u>See</u> Scheanette's Federal Habeas Pet. at 32-52. In particular, he complains about Dr. Kessner opining that there was a 18.8% chance that Scheanette would commit acts of violence in prison.  <u>Id.</u> at 35.   S.O. Woods, he urges, exacerbated his plight with testimony about the difficulties inherent in housing violent inmates and how inmates are free to commit acts violence. <u>Id.</u> at 41.

In order to prevail on an ineffective assistance of counsel ground, Scheanette must show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  Both prongs of the <u>Strickland</u> test must be met to demonstrate ineffective assistance.  <u>Id.</u> at 697.  To establish the first prong, Scheanette must overcome a strong presumption that his counsels' conduct falls within the wide range of reasonable professional assistance.  <u>Id.</u> at 689.  It is not enough to show that some, or even most, defense lawyers would have handled the case differently.  <u>Green v. Lynaugh</u>, 868 F.2d

14

176, 178 (5th Cir. 1989).  For the second prong, Scheanette must show that his counsel's errors were so serious as to "deprive him of a fair trial, a trial whose result is reliable."  <u>Strickland</u>, 466 U.S. at 687.[10]  Because Scheanette is challenging a death sentence, the question is whether there is a reasonable probability that, absent the errors, the jury--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.  <u>Id.</u> at 695. A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Williams v. Taylor</u>, 529 U.S. 362, 391 (2000).

Scheanette has failed to meet either <u>Strickland</u> prong. First, trial counsel objectively employed a reasonable strategy of putting on both of the complained of witnesses.  Given that the State's evidence established Scheanette as a murderer and serial rapist, the court is frankly at a loss as to what other types of evidence Scheanette contends his counsel could have introduced on his behalf to rebut the existing evidence as to his future dangerousness.  With respect to the second prong, it follows that, without the complained of evidence, the jury would have been left to assess Scheanette's future dangerousness based

_____

[10]If Scheanette cannot show that the ineffectiveness of his counsel deprived him of a substantive or procedural right to which the law entitles him, then he must show that the result of the proceeding was fundamentally unfair or unreliable.  <u>Williams v. Taylor</u>, 529 U.S. 362, 391-93 (2000) (discussing <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), and <u>Nix v. Whiteside</u>, 475 U.S. 157 (1986)).

solely on the State having linked him to one other capital murder and five other brutal sexual assaults, at least some of which occurred with the victims' children nearby.  That scenario hardly creates a reasonable probability that, without Kessner's and Woods's testimony, Scheanette's sentence would have been life over death.

E.    Ground Five:  Scheanette was denied due process and his right to jury trial when the trial court "grafted" in the jury charge the evidentiary requirements of Special Issue No. 1 terminology on future dangerousness onto Special Issue No. 2 on mitigation.

Here, Scheanette claims that he was denied due process and his right to jury trial as guaranteed by the Fourteenth and Sixth Amendments respectively.  Specifically, he complains that, in the jury charge, the trial court improperly "grafted" the evidentiary requirements of Special Issue No. 1 terminology on future dangerousness onto Special Issue No. 2 on mitigation.  See Scheanette's Federal Habeas Pet. at 32-52.  This alleged error resulted in the following punishment charge:

> In deliberating on Special Issue No. 1 and Special Issue No. 2, the Jury shall consider all of the evidence admitted at the guilt or innocence phase and the punishment phase, including evidence of the defendant's background or character or circumstances of the offense that militates for or mitigates against imposition of the death penalty.

Id. at 49 (emphasis added).  Scheanette's argument appears to be that the jury should have been instructed solely to consider evidence mitigating against the death penalty on Special Issue No. 2.  Instructing the jury also to consider evidence militating for the death penalty was error.  Id. at 51-52.  Whether

16

Scheanette is correct is irrelevant, however, because this ground is procedurally barred.

Before a ground may be raised in a federal habeas petition, a petitioner must have fairly presented it to the state courts. See Picard v. Connor, 404 U.S. 270, 275 (1971).  That is, the state court system must have been presented with the same facts and the same legal theory.  Id. at 275-76.  Mere similarity of claims is insufficient to meet the exhaustion requirement.  See Duncan v. Henry, 513 U.S. 364, 366 (1995); Wilder v. Cockrell, 274 F.3d 255, 260-61 (5th Cir. 2001).  Where it is clear that a petitioner would be barred from returning to state court to present an unexhausted claim for consideration, that claim is subject to denial as procedurally defaulted in federal court unless the petitioner can demonstrate cause and prejudice for the default.  See Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Coleman, 501 U.S. at 735 n.1.

To the extent this ground urges violation of the Sixth Amendment, Scheanette failed to exhaust this claim in state court.  He is foreclosed from doing so now through a second habeas petition because of Texas's abuse of the writ doctrine. See Fuller v. Johnson, 158 F.3d 903, 906 (5th Cir. 1998); Tex. Code Crim. Proc. 11.071, § 5(a) (Vernon 2005).  Consequently, a state court would find this portion of ground five procedurally barred.  Scheanette has demonstrated no cause or prejudice for the default.  The Sixth-Amendment claim is thus procedurally defaulted.

17

As far as the Fourteenth Amendment claim, Scheanette failed
to object to the jury charge.  See Scheanette, 144 S.W.3d at 507.
Consequently, as Scheanette concedes, he must show egregious harm
from any error to be entitled to relief.  Id.; Scheanette's
Federal Habeas Pet. at 50, 52.  The court cannot find any
evidence in the record indicating that Scheanette suffered
egregious harm from this jury instruction.  Rather, the court
concurs with the holding of the Texas Court of Criminal Appeals
on direct appeal that the jury was entitled, under the law, to
consider all of the evidence and that, as a result, any improper
addition to the language in this jury instruction did not harm
appellant.  Scheanette, 144 S.W.3d at 507.  In short, Scheanette
has failed to show that this decision was contrary to, or
involved an unreasonable application of, clearly established
federal law.  See 28 U.S.C. § 2254(d)(1).

F.  <u>Ground Six:  The Texas death penalty scheme is
    unconstitutional as applied to Scheanette because the
    prosecution did not have to negate the existence of
    mitigation beyond a reasonable doubt.</u>

Relying on the Supreme Court's opinions of <u>Apprendi</u> and
<u>Ring</u>, Scheanette argues that the Texas death penalty scheme is
unconstitutional, because the State is not required to prove
beyond a reasonable doubt the absence of mitigating circumstances
sufficient to warrant the imposition of a life rather than death
sentence.  See Scheanette's Federal Habeas Pet. at 53-66.
Scheanette is incorrect.  Neither <u>Apprendi</u> nor <u>Ring</u> require a
mitigating factor to be proven beyond a reasonable doubt.

18

Rather, the issue in both cases was whether a more severe
punishment could be imposed by a trial judge after a jury found
the facts.  See Apprendi v. New Jersey, 530 U.S. 466, 491-92
(2000); Ring v. Arizona, 536 U.S. 584, 597 (2002). Because this
ground fails to identify any erroneous or unreasonable
application of clearly established federal law, habeas relief is
not warranted.  See 28 U.S.C. § 2254(d)(1).

G.   Ground Seven: The mitigation instructions sent "mixed
     signals" to the jury in violation of the Eighth and
     Fourteenth Amendments.

     Scheanette argues at great length that the mitigation
instructions were not effective in telling the jury how to
consider his mitigating evidence, because they sent "mixed
signals."  See Scheanette's Federal Habeas Pet. at 66-91.  Once
again, however, he has failed to show that the complained-of
instructions were contrary to, or involved an unreasonable
application of, clearly established federal law in contravention
of 28 U.S.C. § 2254(d)(1).  The Supreme Court case of Penry v.
Johnson, 532 U.S. 782, 797 (2001), on which Scheanette heavily
relies, notes that the key to a constitutional sentencing scheme
is that the jury be able to consider and give effect to a
defendant's mitigating evidence in imposing a sentence.
Scheanette has failed to persuade the court that such was not the
case here.

H.   Ground Eight: Scheanette was denied due process and his
     right to jury trial by the trial court's refusal to grant
     two requested jury charges.

     Scheanette claims that his rights to due process and jury

trial were violated when the trial court refused two jury charge requests. See Scheanette's Federal Habeas Pet. at 98-107. On appeal, these claims were raised as simple trial error, not violations of federal law. See, e.g., Scheanette, 144 S.W.3d at 507-509. Thus, Scheanette failed to exhaust his state-court remedies with respect to this ground. See Picard, 404 U.S. at 275 (Before a ground may be raised in a federal habeas petition, a petitioner must have fairly presented it to the state courts). Moreover, when Scheanette re-urged the issues raised by this ground on state-habeas review, the Texas Court of Criminal Appeals adopted the trial court's finding that there were "not cognizable because the issues have already been raised and rejected on direct appeal." See HR at 23 (point of Error Nos. 26 and 27), 235, ¶ 3. The state court's application of procedural bars similarly bars review of this ground here. See Sori v. Johnson, 207 F.3d 232, 249 & nn. 23 & 24 (5th Cir. 2000); Rowell, 398 F.3d at 374.

I.   Ground Nine:  Scheanette was denied due process and his right to jury trial by the court's refusal to permit counsel to voir dire on issues regarding parole in mitigation of the death penalty.

Here, Scheanette complains that the jury should have been informed that the parole authorities would have, inter alia, made certain determinations as the issue of his future dangerousness before making a parole decision. See Scheanette's Federal Habeas Pet. at 107-113.

The court concurs with respondent that Scheanette failed to exhaust this ground as required. On direct appeal, Scheanette

raised this claim as a simple trial error claim under Texas state law.  It was addressed and rejected as such by the Texas Court of Criminal Appeals.  See Scheanette, 144 S.W.3d at 507.  Again, where it is clear that a petitioner would be barred from going back to state court to present an unexhausted claim for consideration, that claim is subject to denial in federally court as procedurally defaulted.  See Gray, 518 U.S. at 161-62; Coleman, 501 U.S. at 735 n.11;.  See Fuller, 158 F.3d at 906. 1998).  It would be futile for Scheanette to present his revised claim to state court now because he would be cited for abuse of writ.  Tex. Code Crim. Proc. 11.071, § 5(a).  Scheanette can overcome the resulting procedural bar only if he shows cause and prejudice for the default, or that failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.  Scheanette has not met this burden.

J.   Ground Ten: Scheanette is entitled to relief for cumulative error of above constitutional violations even if no separate infraction by itself rose to that magnitude.

Scheanette urged cumulative error as a ground in his state-habeas proceedings as well.  There, the trial court made a specific factual finding, subsequently adopted by the Texas Court of Criminal Appeals, that: "The Trial court did not err multiple times.  Thus a series of errors did not magnify each other during trial. [Scheanette] has failed to prove by a preponderance of the evidence that there was 'cumulative error.'" See Habeas R. at 234, ¶ 12; Ex Parte Scheanette, 2005 WL 3429304 (Tex. Crim. App. Dec. 14, 2005).  A determination of a factual issue made by a

state court shall be presumed to be correct unless such
presumption is rebutted by clear and convincing evidence.   28
U.S.C. §2254(e)(1).   Scheanette has presented no clear and
convincing evidence here.   Further, federal habeas relief is only
available for cumulative errors that are of a constitutional
dimension.   See Coble v. Dretke, ---F.3d---, 2006 WL 71192, *7
(5th Cir. 2006).   As discussed above, Scheanette has not
identified any errors rising to that level.

VI.

Order

For the reasons discussed herein,

The court ORDERS that the petition be, and is hereby,
denied.

SIGNED April 10, 2006.

/s/ John McBryde
JOHN McBRYDE
United States District Judge
